OPINION
Brenda B. Davies is appealing from her conviction and sentence of two charges, operating a motor vehicle under the influence of alcohol and a marked lanes violation, to which she pled no contest following a hearing on a suppression motion which her counsel had filed. Upon our review of the record, we initially found that there was no final appealable order since the entry of judgment and sentence had neither been recorded by the clerk of courts nor signed by the judge. After we issued a show cause order, a nunc pro tunc entry was properly filed setting forth the findings of guilt and the sentence. This matter is now properly before us.
The defendant's motion to suppress her arrest and the observations of the arresting officer, as well as any statement she made, challenged the arresting officer's stop of Davies on the ground that he had no reasonable suspicion to believe that a traffic violation had occurred. On appeal, Davies continues her challenge to the lawfulness of the traffic stop in bringing the following sole assignment of error:
 THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE SUPPRESSION MOTION BECAUSE THE STATE FAILED TO PROVE THAT THE OFFICER STOPPED THE CAR BASED ON A REASONABLE SUSPICION THAT THE DRIVER HAD COMMITTED A TRAFFIC OFFENSE.
The only testimony during the hearing held on the motion to suppress was by the arresting traffic officer of the city of Centerville, Ohio, James A. Shanesy, who testified regarding the stop as follows:
 Q. Officer, on April 22nd at sometime after three (3) a.m. you arrested the Defendant sitting over here, is that correct?
A. Yes sir. I did.
 Q. And I'd like for you to tell the Judge what it was that caused you to stop her car which then subsequently precipitated her arrest?
 A. I was traveling southbound on South Main Street in the area of Bristle Drive and I observed a white Pontiac Fiero traveling northbound on South Main Street near Mallard Glen. What drew my attention to the vehicle is that it was almost centered perfectly over the broken white lines that separate the, both of the northbound lanes of South Main Street. I made a U-turn after the car passed me at Mallard Glen and I got behind the car. It drifted into the left through lane and came to a stop just before Delridge Drive. At that time I didn't have my lights on or anything. I couldn't understand why it just stopped in the middle of the road.
Q. Oh there's no stop light or stop sign or anything there?
A. Not where she stopped. No sir.
Q. All right this, this is on Main Street?
A. This is on South Main Street.
Q. Okay. Then what happened?
 A. I then turned my blue lights on so that we wouldn't get hit from behind and the vehicle pulled onto Delridge Drive and came to a stop just west of the South Main access road.
 Q. So you, back up a little bit in this. You saw the car driving with the center line down the middle of the car. Was this in a transitional stage when the car was going from one lane to the other or was it just traveling with the center line, the divided line splitting the car?
A. It was traveling in that, in that manner.
Q. Is that a violation?
A. Yes sir. It is.
Tr. 5-7.
The officer then recited the indicia suggesting Davies was under the influence of alcohol which he observed and the field sobriety tests he administered to her. (Tr. 8-17). After she substantially failed the sobriety tests, he placed her under arrest for driving under the influence.
Davies argues on appeal that crossing a marked lane does not necessarily justify a traffic stop, citing several cases where the courts held that, for instance, "a momentary or minuscule crossing the right edge line, without more, does not justify a stop of the vehicle." State v. Johnson (1995), 105 Ohio App.3d 37, 41, and Statev. Gullett (1992), 78 Ohio App.3d 138, 145, where the court found that a stop was not justified "[w]here a vehicle is driven on a roadway with no other traffic present, there was no speeding, erratic driving or other conduct except for the edge line incident."
In response, the State argues first, that there was actually no stop at all since Davies had already stopped in the middle of the road by herself before the arresting officer activated his vehicle lights. And, secondly, that the stop was justified because Davies was committing a gross violation of the marked lanes requirement by not just momentarily crossing the marked lane line, but actually straddling it while driving down the highway. We reject the State's first argument but accept its second one. We find that a stop of a vehicle is properly initiated when the police officer activates his overhead lights. Certainly in this case the driver of the vehicle understood that a stop was being effected because she promptly turned off the highway and stopped her vehicle almost immediately and actually began to exit it.
As to the State's second argument, however, we find that it has merit. In this case, Davies was not committing a de minimus violation of the edge line or center marked line dividing the two lanes. She was driving down the middle of the marked line, actually straddling it, for some distance, and then bringing her vehicle to a complete stop in the middle of the highway where there is no traffic device calling for a stop. Obviously, this was erratic driving which clearly justified the officer's stop of Davies' vehicle, following which he found sufficient grounds to arrest Davies for both marked lane violation and driving under the influence.
The assignment of error is overruled, and the judgment is affirmed.
 ___________________________ FREDERICK N. YOUNG, J.
BROGAN, J. and FAIN, J., concur.